134 Nev., Advance Opinion 74

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE ON BEHALF OF THE HOLDERS OF THE HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-12, Appellant, vs. TIM RADECKI, Respondent. | No. 71405 |

FILED

SEP 13 2018



Appeal from a judgment, following a bench trial, in an action to quiet title. Eighth Judicial District Court, Clark County; James Crockett, Judge.

*Affirmed.*

Ballard Spahr LLP and Sylvia O. Semper and Abran E. Vigil, Las Vegas; Ballard Spahr LLP and Anthony C. Kaye, Salt Lake City, Utah, for Appellant.

The Wright Law Group and John Henry Wright, Las Vegas, for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

This appeal requires us to consider the competing interests of the purchaser of a property at a homeowners' association foreclosure sale

SUPREME COURT
OF
NEVADA

(O) 1947A

18-35752

and the beneficiary of a deed of trust on that property at the time of the sale. *See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A. (SFR I)*, 130 Nev. 742, 758, 334 P.3d 408, 419 (2014) (holding that valid foreclosure of an HOA superpriority lien extinguishes a first deed of trust).

After a bench trial, the district court determined that appellant Wells Fargo Bank, N.A.'s deed of trust was extinguished by a valid foreclosure sale. On appeal, Wells Fargo argues that the foreclosure sale should have been invalidated on equitable grounds, the foreclosure sale constituted a fraudulent transfer under the Uniform Fraudulent Transfer Act (UFTA), and that the foreclosure deed failed to transfer ownership of the property.

We disagree on all three points. We agree with the district court's conclusion that there was no "unfairness or irregularity" in the foreclosure process, *see Golden v. Tomiyasu*, 79 Nev. 503, 515, 387 P.2d 989, 995 (1963), so the district court correctly rejected Wells Fargo's equitable argument. UFTA does not apply because regularly conducted, noncollusive foreclosure sales are exempt from that statute. Lastly, we agree with the district court's conclusion that an irregularity in the foreclosure deed upon sale does not invalidate the foreclosure as a whole. Accordingly, we affirm.

*FACTS AND PROCEDURAL HISTORY*

This case concerns competing rights to 2102 Logston Drive, North Las Vegas (the Property). In 2006, in exchange for a $196,000 loan, a homeowner encumbered the Property with a Deed of Trust (DOT). That DOT was eventually assigned to appellant Wells Fargo.

The Property is located within the Cambridge Heights planned community (the HOA) and is subject to the HOA's Covenants, Conditions, and Restrictions (CC&Rs). Those CC&Rs obligated the Property owner to

pay monthly assessments and authorized the HOA to impose a lien upon the Property in the event of nonpayment.

By 2012, the homeowner had defaulted on both the loan and the HOA payments. The HOA recorded a Notice of Delinquent Assessment and a Notice of Default. Then, before the HOA recorded a Notice of Foreclosure sale, Wells Fargo sued for judicial foreclosure on the property. Wells Fargo secured a default judgment against both the homeowner and the HOA. The written judgment declared that Wells Fargo's DOT "is superior to all right, title, interest, lien, equity or estate of the Defendants with the exception of any super priority lien rights held by any Defendant pursuant to NRS 116.3116."

The HOA then conducted a foreclosure sale pursuant to NRS 116.3116. The winning bidder at that sale was respondent Tim Radecki, who purchased the property for $4,000. The declaration of value associated with the sale indicated that the tax value of the property was $56,197.

Radecki moved to intervene in Wells Fargo's foreclosure suit. The district court granted that motion and held a bench trial to determine whether Radecki or Wells Fargo had superior title to the Property. In its judgment following trial, the district court rejected Wells Fargo's arguments as to why the foreclosure sale should be invalidated and held that Wells Fargo's DOT was extinguished pursuant to *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 334 P.3d 408 (2014). Thus, the district court quieted title in favor of Radecki.

Wells Fargo appeals.



## DISCUSSION

Wells Fargo raises numerous issues, some of which this court has conclusively decided in our HOA foreclosure jurisprudence.[1] Three of Wells Fargo's arguments are novel: (1) Wells Fargo argues that the actions of the HOA and the intent of the purchaser at the foreclosure indicate "unfairness or irregularity" in the foreclosure process, rendering the foreclosure invalid, (2) Wells Fargo argues that the foreclosure constituted a "fraudulent transfer" under the Uniform Fraudulent Transfer Act, and (3) Wells Fargo argues that the foreclosure deed failed to convey the property to Radecki.

After a bench trial, this court reviews the district court's legal conclusions de novo. *Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012). The district court's factual findings will be left undisturbed unless they are clearly erroneous or not supported by substantial evidence. *Id.*

---

[1]That is, Wells Fargo attacks NRS Chapter 116 as unconstitutional. We rejected this claim in *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage*, 133 Nev., Adv. Op. 5, 388 P.3d 970, 971 (2017), and we see no new arguments in Wells Fargo's briefing that would lead us to revisit this constitutional issue. Wells Fargo also argues that the foreclosure should be invalidated due to the grossly inadequate price alone. This claim has no merit in light of this court's decision in *Nationstar Mortgage, LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, in which we clarified that "inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a [foreclosure] sale." 133 Nev., Adv. Op. 91, 405 P.3d 641, 643 (2017) (alteration in original; quotation marks omitted).

Supreme Court
OF
Nevada

(O) 1947A

4

*There was not unfairness or irregularity in the foreclosure process*

Wells Fargo argues that the foreclosure sale should be invalidated due to the low purchase price coupled with "evidence of unfairness or irregularity" in the foreclosure process. *See Golden v. Tomiyasu*, 79 Nev. 503, 515, 387 P.2d 989, 995 (1963). Wells Fargo first argues that the HOA "intentionally evaded the judicial process and went forward with the HOA sale despite defaulting" in Wells Fargo's judicial foreclosure proceeding. The HOA's actions, Wells Fargo contends, "suggest[ ] a race to complete a [foreclosure] sale before the [district] Court could issue a foreclosure judgment." This argument ignores the fact that Wells Fargo's default judgment explicitly stated that Wells Fargo's DOT was superior to all other interests *"with the exception of any super priority lien* rights held by any Defendant pursuant to NRS 116.3116." (Emphasis added.) NRS 116.31162 authorized the HOA to nonjudicially foreclose on that superpriority lien. To the extent the HOA "race[d]" to foreclose on that lien, it was entitled to do so.

Wells Fargo additionally argues that Radecki was not a bona fide purchaser (BFP) because he "admittedly had knowledge of Wells Fargo's competing interest" and "he was aware of the legal and title issues surrounding HOA foreclosure sales." Radecki cannot possibly be a BFP, Wells Fargo argues, because Radecki himself did not believe he was acquiring title to the property. Thus, Wells Fargo concludes, it is unfair to award unencumbered title to Radecki.

We agree with the district court that Radecki had no obligation to establish BFP status. The BFP doctrine provides an equitable remedy to protect innocent purchasers from an otherwise *defective* sale; it does not provide an equitable basis to invalidate an otherwise *valid* sale. *See 25*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Corp. v. Eisenman Chem. Co.*, 101 Nev. 664, 675, 709 P.2d 164, 172 (1985) ("The bona fide doctrine protects a subsequent purchaser's title against competing legal or equitable claims of which the purchaser had no notice at the time of the conveyance."). "Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby." *Shadow Wood Homeowners Ass'n., Inc. v. N.Y. Cmty. Bankcorp, Inc.*, 132 Nev. 49, 66, 366 P.3d 1105, 1116 (2016) (quotation marks omitted). Given that the foreclosure sale was valid, Radecki's subjective beliefs as to the effect of the foreclosure sale are irrelevant.

In sum, Wells Fargo has failed to show "evidence of unfairness or irregularity" in the foreclosure process that would invalidate the foreclosure sale on equitable grounds. *See Golden*, 79 Nev. at 515, 387 P.2d at 995.

*A properly conducted NRS Chapter 116 foreclosure sale is not a "fraudulent transfer"*

Wells Fargo argues that the foreclosure sale violated NRS Chapter 112, the Uniform Fraudulent Transfer Act (UFTA). "The UFTA is designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Fin., LLC*, 123 Nev. 228, 232, 162 P.3d 870, 872 (2007). While a "[f]raudulent conveyance under NRS Chapter 112 does not require proof of intent to defraud," the creditor bears the burden of proof to establish that a fraudulent transfer occurred. *Sportsco Enters. v. Morris*, 112 Nev. 625, 631, 917 P.2d 934, 937 (1996).

 

Wells Fargo argues that the conveyance was fraudulent under NRS 112.180(1)(b)(1), NRS 112.180(1)(b)(2), and NRS 112.190(1). NRS 112.180(1)(b)(1) does not apply, because there was no evidence that the homeowner "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small." Nor is NRS 112.180(1)(b)(2) applicable, because there was no evidence that the homeowner "[i]ntended to incur, or believed or reasonably should have believed that [she] would incur, debts beyond . . . her ability to pay as they became due." Wells Fargo's strongest argument is that the sale violated NRS 112.190(1), which provides in full:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

As relevant here, to succeed under its NRS 112.190(1) UFTA claim, Wells Fargo must show the following: (1) A transfer of an asset occurred, (2) Wells Fargo's claim preexisted the transfer, (3) the transfer was not for "reasonably equivalent value," and (4) the homeowner was insolvent at the time of the transfer. *Id.*

Some of these elements are clearly met. As to the second element, Wells Fargo's DOT constitutes a prior claim on the Property that was transferred via the foreclosure sale. The fourth element is likewise met because the homeowner was not paying her debts at the time of the transfer, and "[a] debtor who is generally not paying . . . her debts as they become due is presumed to be insolvent." NRS 112.160(2).

SUPREME COURT
OF
NEVADA

(O) 1947A

7

We hold that the third element of an NRS 112.190(1) claim is not met.[2] At first glance, Wells Fargo persuasively argues that the $4,000 purchase price was not "reasonably equivalent" to the Property's value, which was assessed to have a tax value of $56,197. However, Wells Fargo ignores NRS 112.170(2), which provides in pertinent part:

> a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement.

The effect of this safe harbor provision is to exempt certain transfers from UFTA by treating them as being for "reasonably equivalent value" regardless of the price. A "regularly conducted, noncollusive foreclosure sale" is one such type of exempted transfer. NRS 112.170(2).

The question is whether this provision covers HOA foreclosure sales. One argument against such sales being included is that NRS 112.170(2) specifically refers to "default under a mortgage, deed of trust or security agreement." In referring to those three types of encumbrances, the Legislature arguably intended to exclude other types of encumbrances, such as HOA assessment liens. *See Galloway v. Truesdell*, 83 Nev. 13, 26, 422

---

[2]Given this holding, we need not consider whether the Property constitutes an "asset" within the meaning of UFTA. *Compare Guild Mortg. Co. v. Prestwick Court Tr.*, No. 2:15-CV-258 JCM, 2018 WL 894609, at *10-11 (D. Nev. Feb. 14, 2018) (holding that property in any way encumbered is exempted from UFTA's definition of "asset"), *appeal docketed*, No. 18-15293 (9th Cir. Feb. 22, 2018), *with Or. Account Sys., Inc. v. Greer*, 996 P.2d 1025, 1029 (Or. Ct. App. 2000) (holding that encumbered property constitutes an asset as long as the property's value exceeds "the amount of the encumbering lien(s)").

P.2d 237, 246 (1967) ("The maxim 'Expressio Unius Est Exclusio Alterius,' the expression of one thing is the exclusion of another, has been repeatedly confirmed in this State."). However, we interpret "default under a mortgage, deed of trust or security agreement" to limit only "execution of a power of sale," as opposed to "noncollusive foreclosure sale." That is, we interpret NRS 112.170(2) to cover *any* "regularly conducted, noncollusive foreclosure sale" and *certain* types of executions of power of sale—namely, those that occur "upon default under a mortgage, deed of trust or security agreement." This interpretation is consistent with both the statute's plain meaning and UFTA's primary purpose of "prevent[ing] a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *See Herup*, 123 Nev. at 232, 162 P.3d at 872. Wells Fargo's DOT was extinguished not by fraud, but by the consequences of NRS 116.3116 and *SFR 1*, 130 Nev. at 743, 334 P.3d at 409.

The district court concluded that the foreclosure sale was valid because it complied with the relevant provisions of NRS Chapter 116. As we analyzed in the prior section of this opinion, the district court's finding was supported by substantial evidence. A foreclosure sale that complies with the relevant statutory requirements is necessarily one that is "regularly conducted" and "noncollusive." *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 545 (1994) (holding that "'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with"). Thus, the foreclosure sale was necessarily for "reasonably equivalent value," NRS 112.170(2), so Wells Fargo's UFTA claim fails.

SUPREME COURT
OF
NEVADA

(0) 1947A

*Alleged inaccuracies in a foreclosure deed do not invalidate the foreclosure sale*

Lastly, Wells Fargo argues that reversal is warranted because the foreclosure deed did not say that it transferred ownership of the property to Radecki. The district court rejected this argument, holding that "[i]f the Foreclosure Deed contains irregular language, this irregularity can be remedied" without invalidating the foreclosure sale. The district court was again correct. Invalidation of the foreclosure sale is not the way to remedy alleged inaccuracies within the Foreclosure Deed. As the district court found, the foreclosure sale fully complied with NRS Chapter 116, so that sale "vest[ed] in the purchaser the title of the unit's owner." NRS 116.31166(3) (1993).

## CONCLUSION

We affirm the district court's conclusion that the foreclosure sale should not be invalidated on equitable grounds. We hold that a "regularly conducted, noncollusive" NRS Chapter 116 foreclosure sale is exempt from UFTA pursuant to NRS 112.170(2). Lastly, we hold that an alleged inaccuracy in a foreclosure deed does not invalidate an otherwise

valid foreclosure sale. Accordingly, we affirm the district court's decision to award title to Radecki.

_____, J.
Stiglich

We concur:

_____ C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre